## VALENTINE GEIST ET AL. V. THE DETROIT CITY RAILWAY.

*Street railways—Contributory negligence—Question for jury—Argument of counsel—Judicial notice.*

1. The question of the contributory negligence of the driver of plaintiffs' hearse in attempting to cross defendant's track depended largely upon the proximity of defendant's car to the crossing when first seen, or when by the exercise of due diligence it could have been seen, by the driver. The testimony was conflicting. And it is held that the court did not err in submitting the question to the jury.

2. The judgment in this case is reversed because of the reference by plaintiffs' counsel in his argument to the jury, without provocation, to the defendant, as "the unfortunate city railway, whether driven through the streets by the mob, or driving along in its usual course," in view of the great excitement and anger of the populace, which culminated in mob violence against the defendant but a few weeks before the trial, and of which the Court cannot fail to take judicial knowledge as a matter of current history.

Error to Wayne. (Hosmer, J.) Argued April 6, 1892. Decided May 6, 1892.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Sidney T. Miller (John C. Donnelly*, of counsel), for appellant.

*William Look* and *H. F. Chipman*, for plaintiffs.

MORSE, C. J. This is an action for negligent injury to a hearse, and the damages resulting therefrom to plaintiffs, who are undertakers in the city of Detroit, caused by the collision of the same with a street car

of defendant. Plaintiffs had verdict and judgment for $384.57.

The collision occurred on the crossing of Baker street and Fourteenth avenue, in the city of Detroit, on May 28, 1890. The funeral procession in which the hearse was being driven was passing slowly down Fourteenth avenue. The two leading carriages of the procession crossed Baker street in safety. The hearse was the third in the procession. The intersection of Baker street and Fourteenth avenue is at the foot of a steep railroad bridge. This bridge is about 200 feet in length on the incline, and over 20 feet in height at its highest point. The testimony was very conflicting as to the cause and details of the accident.

The negligence averred upon the part of the car driver is the failure to use the brakes, and running at a speed of from 12 to 15 miles per hour down this incline, without any particular effort to slow up until just as he neared the hearse, when he partially turned on the brake; and turned his horses to one side, off the track. It is also averred that suitable brakes and appliances were not provided with which to stop the car. The car struck the hind wheel of the hearse, tipping it over, and badly injuring it.

The court below was asked to direct a verdict for the defendant on the ground of the contributory negligence of the driver of plaintiffs' hearse. His testimony as to where the car was when he first saw it differed upon this trial from his evidence given upon a previous trial. On the first trial he testified that he did not see the car until it was within 25 or 30 feet away, and it was going from 12 to 15 miles an hour, and his horses were just approaching the track when he saw it; that he thought he could get across, and whipped up his horses to do so. On the last trial he testified that the next day after the

first trial he went and measured the distance, and found that the car was 180 feet from the crossing when he first saw it, and that when he was crossing the track it was about 100 feet from him, coming at a "terrible" rate of speed.

It is argued that, if his testimony first given was true, it was negligence for him to attempt to cross the track. This is undoubtedly so. It is also contended that his testimony as given upon the last trial cannot be true, because, with his team upon a walk, he could have crossed safely with the car 100 feet away. But there was other testimony as to the proximity of the car to the crossing when first seen, given by other parties in the funeral procession, and, although it is a close question, we are satisfied that the court did not err in submitting the question of the driver's negligence, under all the circumstances, to the jury. The distance that the car was from the crossing at the time it was first seen, or could have been seen by due diligence on the part of the driver, was one of estimation; and but few witnesses can state with any degree of accuracy the number of feet a car or other object is from them, when called upon to state it without measurement, or without particular thought, at the time the object was seen, as to the number of feet it was away. It seems strange that this collision should have taken place as it did, but we are not prepared to say as a matter of law that the driver of the hearse was in fault.

In this connection it may as well be stated that this case must be reversed because of an improper remark made to the jury by one of the counsel for plaintiffs. In the course of his argument, without any provocation, as appears from the record, he alluded to the defendant company as—

"The unfortunate city railway, whether driven through

the streets by the mob, or driving along in its usual course."

In view of the great excitement and anger of the populace, which culminated in mob violence against this railway company but a few weeks before the trial, of which we cannot fail to take judicial knowledge as a matter of current history, this remark might have revived this feeling, and had a prejudicial effect upon the jury against the defendant. If the case were a plain one as to the negligence of the defendant or the want of negligence upon the part of the hearse driver, this remark might be excused, upon the ground that it could have worked no injury; but, as doubtful as the case stands upon both propositions under the evidence, we cannot say that it did not turn the scales of justice or overbalance them.

There was no evidence given on the part of the plaintiffs as to what kind of a brake was used upon the car, or whether any brake or other appliance for stopping it was provided for that particular car, but a witness for the plaintiffs was permitted, before the defendant took the case, to state that the car might have been stopped if the brake was in good order and had been applied. Another witness was allowed to testify to the same effect. Both these witnesses had been street-car drivers, but it was not shown that they knew what brakes were on this car, or that they had ever run a car down this incline. One of them testified that he had never done so. No testimony was given, other than this, by the plaintiffs, relative to the appliances upon this car for stopping it, and the testimony was not admissible. It was a matter of which they were not shown to have the required knowledge to give an opinion.

One item of damage was the necessary hiring of other

hearses to supply the place of plaintiffs' hearse while it was being repaired. It is objected that the amount so paid for hire was not shown to be reasonable. This will probably be corrected on another trial.

The judgment is reversed, and new trial granted, with costs of this Court to defendant.

LONG, GRANT, and MONTGOMERY, JJ., concurred. McGRATH, J., took no part in the decision.