## PEOPLE v. NIXON.

1. WITNESSES — CROSS-EXAMINATION WITHIN COURT'S DISCRETION.
   In a prosecution for taking indecent liberties with a five-year old girl, cross-examination of defendant as to former arrest and acquittal of statutory rape was proper and within the discretion of the court.

2. CRIMINAL LAW—ARGUMENT OF COUNSEL—DUTY TO PROTECT DEFENDANT AGAINST PASSION.
   In a prosecution for taking indecent liberties with a five-year old girl, argument of the assistant prosecuting attorney referring to a similar case in same county in which a degenerate shortly before had brutally murdered a little girl, and, on objection thereto, the remark of the court that the jury had a right to use their brains, were prejudicial; it being the duty of prosecutor and court to protect defendant against passion and insure him a fair trial.

3. SAME—EVIDENCE—JUDICIAL NOTICE.
   In a criminal prosecution, the court may take judicial notice of another similar case of wide publicity and current history, which was referred to by prosecutor in his argument.

4. SAME—EVIDENCE.
   It is a matter of common knowledge that advertisement of horrible crimes has a tendency not only to incite degenerates to like outrages, but also to produce false accusations by publicity seekers.

Error to Genesee; Brennan (Fred W.), J. Submitted June 14, 1928. (Docket No. 131, Calendar No. 33,789.) Decided July 24, 1928.

Ira Nixon was convicted of taking indecent liberties with a female child, and sentenced to imprisonment for not less than 9 nor more than 10 years in the State prison at Jackson. Reversed.

*Paul V. Gadola, Frank Stipes,* and *G. Sweetman Smith,* for appellant.

*Wilber M. Brucker,* Attorney General, *William R. Roberts,* Prosecuting Attorney, and *Charles D. Beagle,* Assistant Prosecuting Attorney, for the people.

FEAD, C. J.     Defendant was convicted of the crime of taking indecent liberties with 5-year old Cornelia Root in the city of Flint and sentenced to a minimum of 9 and a maximum of 10 years in the State prison. Cornelia testified that defendant enticed her into his home on promise of giving her a balloon, and there took the liberties, without, however, any attempt at other assault.     There had been no former acquaintance between Cornelia and defendant.     The charge was denied by defendant and his wife.     The surrounding circumstances were meager, and the issue was one of veracity of witnesses.

In 1909, defendant had been accused of statutory rape, arrested, and acquitted.     His cross-examination here was almost entirely with reference to the prior charge.     It went to unnecessary length.     But defendant was not frank nor clear in his answers nor certain as to the time of the former charge; he volunteered remarks which prolonged the inquiry; his counsel were not definite in objections, and the cross-examination had not the appearance of a prejudicial plan of the prosecution.     Defendant's wife was also examined as to the charge in a few questions, merely enough to establish the time and fact.     The subject-matter was proper cross-examination, within the discretion of the court (*Driscoll* v. *People,* 47 Mich. 413), and we do not find reversible error in the manner of its conduct.

On the argument, the following occurred:

"*Mr. B*—(assistant prosecuting attorney):     You gentlemen know what happened in this county some time ago.

"*Mr. P*—(defendant's attorney) :    I object to that as improper argument.

"*The Court:* Well—.

"*Mr. B*—: You remember the Hotelling case some time ago.

"*Mr. P*—: I object to the prosecutor referring to the testimony in any other case.

"*Mr. B*—: Well, you have a right to take into consideration all you know, and all you have read.

"*Mr. P*—: I object to that as improper argument.

- "*The Court:* No.   They have a right to use their brains."

The remark of the court amounted to an overruling of the objections and to an instruction to the jury that the argument was proper.

The Hotelling case had occurred at Flint shortly before, and was an incident of wide publicity and current history of which the court may take judicial notice.    *Geist* v. *Railway*, 91 Mich. 446.    Hotelling induced a 5-year old girl to ride with him, took her to a secluded spot, assaulted and murdered her and horribly mutilated her body.    On discovery of the crime, the people of the State were appalled.    The hearts of parents grew cold with fear and parental arms clasped little children closer in protective embrace.    The whole State was aroused to a man hunt. When the assailant was found, indignation at Flint burned to such heat that mobs formed, stormed the jail, and the governor of the State felt called upon to take extraordinary measures to protect the miscreant from an outraged public, to permit the orderly processes of the court to deal with him.    The natural effect of reference to the Hotelling case in Flint in a prosecution for indecent assault upon a child was inflammatory.

It is a matter of common knowledge that advertisement of horrible crimes has a tendency not only to incite degenerates to like outrages but also to produce false accusations by publicity seekers.    At such a

time, it becomes the special duty of officers of the law to use caution as well as vigor in investigation and of courts to stand firm for orderly procedure and cold, passionless justice.

Defendant had had no part in the Hotelling atrocity. That crime had no relation to his case. With the feeling there engendered engulfing everyone in the vicinity who might be accused of an assault upon a little girl, defendant was entitled to the special watchfulness of the prosecuting officers and court to insure him a fair trial and the impartial judgment of a jury. Instead of protecting him from conviction out of passion, the argument of the assistant prosecutor, carrying official weight, injected into the case the specific recommendation to the jury that the Hotelling crime, with its judgment arresting elements, be given consideration by them in passing upon the guilt of defendant. In this, he was upheld by the court.

The argument and ruling were prejudicial to the substantial right of the defendant to be judged by the evidence in his own case, and require reversal of the conviction. A new trial is ordered.

NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred. POTTER, J., did not sit.